IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 83-117

THE STATE OF MONTANA,
ex rel. JAY VOORHIES,

    Relator,

        v.

DISTRICT COURT OF THE THIRD
JUDICIAL DISTRICT OF THE STATE
OF MONTANA, IN AND FOR THE
COUNTY OF DEER LODGE, AND THE
HONORABLE ROBERT J. BOYD,
presiding as District Judge.

    Respondents.

FILED

AUG 18 1983

*Ethel M. Harrison*
CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER AND OPINION

This Court accepted a petition for a writ of certiorari from Jay Voorhies, relator, who contends that the Deer Lodge County District Court exceeded its jurisdiction when it found him in willful contempt of a marital dissolution decree providing that he must make the house payments "until the minor children attain the age of 18 years or no longer reside in the home." He argues the trial court failed to consider his ability to pay. We affirm the contempt order.

The marital dissolution decree was entered by the Deer Lodge County District Court on August 13, 1980. Since then, the father's failure to pay the house payments has triggered two attempts by the wife to have him held in contempt and two petitions by the father to modify the decree. In addition to the order requiring the father to make the monthly house payments, the father was also ordered to pay $150 per month child support for each child.

- 1 -

In May 1981, the father stopped making house payments and in September the son came to live with the father while the daughter remained with the mother. The mother asked that the father be held in contempt for failure to make the monthly house payments and the father moved to modify the decree on custody. After a hearing on both issues, the trial court changed custody of the son from the mother to the father, but also found that the father was in contempt for failure to make the house payments. In ruling on the house payments, the trial court ordered the father to make them because "the necessity of providing support and shelter for his minor daughter remains constant." Clearly, the father's obligation under the decree to make house payments was unaffected by his obtaining custody of the son. The father did not appeal from the order finding him in contempt or from the order compelling him to continue making the monthly house payments.

Sixteen months later (in April 1982), the father again stopped making the monthly house payments. Ten months later (in January 1983), the mother obtained an order for the father to show cause why he had stopped making the monthly house payments. A hearing was set for March 2, 1983, and on that date the father filed a response in which he asked that the trial court modify the house payment provision of the decree. His petition alleged no facts occurred after the last dissolution decree on which he based his request to modify. However, the father testified at the hearing that he had recently bought some property and that the payments on the property ($194.78 per month) prevented him from making the house payment ($190 per month). The trial court did not accept his explanation, finding that the father had

voluntarily incurred the additional obligation that prevented him from making the house payment required in the dissolution decree. The trial court found the father in contempt for failure to make the house payments.

The father then petitioned this Court for a writ of certiorari and we entered a stay order. In arguing that the trial court's contempt order should be set aside, the father relies on both the first modification hearing and the second modification hearing. First, he contends that when his son came to live with him he no longer had to make the house payments. However, the trial court ruled against him and found in the first modification order that the father's duty to make the house payment to support his daughter remained constant, and was not affected by the fact that his son was then living with him. The father did not appeal from that ruling and he cannot now raise it as a defense to the contempt order. Second, the father argues that at the second hearing the trial court did not consider his ability to pay. But the court found that the father had voluntarily incurred other obligations and that he could not use those obligations by which to relieve himself of the duty of making the monthly house payments. We agree. The father undertook these voluntary obligations knowing that he had an obligation to make the monthly house payments. His duty to make the monthly house payments comes first.

Because the District Court clearly had jurisdiction to hold Jay E. Voorhies in willful contempt, the application for a writ of certiorari is denied, and these proceedings are dismissed.

DATED this /8th day of August, 1983.

_____
                                   Justice

We Concur:

_____
            Chief Justice

_____


_____


_____


_____
                Justices

- 4 -